**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**DAVID ST. AMOUR and**
**DIANE ST. AMOUR**

**v.**                                     **CA18-CV-254S**

**FEDERAL HOME LOAN MORTGAGE**
**CORPORATION, US BANK, NATIONAL**
**ASSOCIATION, AS TRUSTEE FOR LSF 9**
**MASTER PARTICIPATION TRUST,**
**CALIBER HOME LOANS, INC.**

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR**
**SUMMARY JUDGMENT**

This memorandum of Plaintiffs,  is filed by their attorney in response to and to object to the Motion for Summary Judgment filed by US Bank, National Association as Trustee for LSF9 Master Participation Trust on the Lost Note Count.  The Plaintiffs in their complaint made the following allegations regarding the lost note, which was the subject of the lost note affidavit.  The Plaintiffs attorney received a Loss Note Affidavit from Caliber Home Loans, Inc. This affidavit, although not signed, was dated October 28, 2014 and indicated that as of that date, while Nationwide Mortgage LLC was the loan servicer that this promissory note had been lost. Subsequently the Plaintiffs, through their attorney mailed to Caliber a Notice of Error as indicated by Exhibit A-6,  alleging that it had committed the following error regarding the lost note:

**The consumers believe that you committed an error by scheduling a foreclosure with a Notice of Sale despite the fact that the promissory note has been lost as indicated by the attached lost note affidavit. Thus all fees and expenses should be removed from the mortgage loan account due to the failure of the alleged owner of the mortgage note to enforce the mortgage note due to its loss**

The response of Caliber Home Loan as indicated in Exhibit A-7

essentially conceded that the note had been lost by stating on April 15, 2018:

**According to statute UCC, R.I. Gen. Laws 6A-3-301, titled "Persons entitled to enforce instrument", Rhode Island law does not require the note to be produced for it to be enforced, so that the assertion that the noteholder has failed to produce the note provides no firm ground on which the borrower could base a claim for relief. As such, Caliber finds no merit to the notice of error which states we scheduled a foreclosure sale despite the fact that the promissory note has been lost. Further the associated fees and costs will not be removed.**

The Plaintiffs followed up this response with another Notice of Error,

Exhibit A-8, which stated:

**This response and failure to correct the error ignores the fact that Rhode Island law relating to lost notes is governed by R.I.G.L 6A-3-309, which states:**

**§ 6A-3-309. Enforcement of lost, destroyed, or stolen instrument.**

**(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the**

instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 6A-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

The Rhode Island Supreme Court in the case of *SMS Financial XXV, LLC v. David Corsetti* et al, No. 2017-299 (R.I., June 21, 2018) held that a lost note could only be enforced by the party in whose possession it was at the time the note was lost.

Your assertion that UCC 6A-3-301 somehow applies is also an error, because that section provides that only a party in possession of the note can enforce the instrument. This section of the General Laws states:

"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 6A-3-309 or 6A-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Thus since this note was lost at some time prior to October 26, 2014 before you claim to have purchased the mortgage loan, you cannot enforce this purported obligation and as a result cannot seek to foreclose on an obligation which you do not own and cannot enforce.

Thus all fees and charges to the mortgage loan relating to legal fees and any costs relating to foreclosure attempts must be removed from the mortgage loan account.

In its response dated October 3, 2018, Caliber merely recited the UCC 6A-3-301 argument and discounted the Supreme Court case of *SMS Financial XXV, LLC v. Corsetti,* without denying that the note was lost.

The pleadings of the case made the following allegations regarding the lost note with no denial by US Bank:

58. The Plaintiffs' mortgage note was lost before US Bank purchased the mortgage loan.

58. Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 58 and, therefore, deny the allegations and leave Plaintiffs to their proofs.

Thus the Defendants could not form a belief as to the truth of the allegation that the mortgage note was lost before US Bank purchased the mortgage loan. It did not deny this allegation and has not amended its answer to this allegation. No affidavit of a witness with any knowledge of the note has been provided to counter this allegation and this assertion has not been denied.

60. As indicated by the lost note affidavit of Nationstar Mortgage, dated October 28, 2014, the Plaintiffs' mortgage note was lost prior to that date.

60. Paragraph 60 refers to a written instrument that speaks for itself and, therefore, a response is not required. To the extent a response is required, Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 60 and therefore deny the allegations and leave Plaintiffs to their proofs.

Thus the Defendants could not form a belief as to the truth of the allegation

that the mortgage note was lost before October 28, 2014, as indicated in the

lost note affidavit of Nationstar Mortgage LLC. It did not deny this

allegation and has not amended its answer to this allegation. No affidavit of

a witness with any knowledge of the note has been provided to counter this

allegation and this assertion has not been denied.

61. This information was transmitted to US Bank, through its loan servicer,
Caliber, which provided the Plaintiffs the lost note affidavit, which was
contained in Caliber's servicing file.

61. Defendants admit that a document that appears to be a lost note affidavit
is contained in the loan files, and deny the remaining allegations and leave
Plaintiffs to their proofs.

  The Defendants admitted that a lost note affidavit for this loan was

contained in the loan files and did not deny this allegation and admitted that

there was a lost note affidavit in the file. This answer has not been amended.

Thus the pleadings not having been amended have not disputed the

allegations of the Plaintiffs that the note has been lost, as referenced by the

lost note affidavit.

        Thus before the purported Motion for Summary Judgment was filed

by the Defendants, in the answer the allegations regarding the lost note were

not admitted or denied because they  did not have sufficient information to

form a belief as to the truth of the allegations in Paragraph 58 that the note

was lost before US Bank purchased the mortgage loan. They are bound by this answer in this Motion for Summary Judgment as they have not amended this answer. They stated that they did not sufficient information to admit or deny, then miraculously claim the note appeared but have not amended their answer to this allegation to a denial based on knowledge.

## THE SUMMARY JUDGMENT MOTION IS NOT SUPPORTED BY A COMPETENT AFFIDAVIT

The sole basis for this Motion for Summary Judgment is the naked assertion of the Attorney for the Defendants, who states, with no basis or authentication relating to the purported lost note:

2. In connection with this litigation, on March 25, 2019, I received the original subject note (the "Note") that relates to the account of David St. Amour and Diane St. Amour The Note arrived in my office subject to a Bailee Letter Agreement from Caliber.

3. On March 25, 2019, personally reviewed the Note.

4. I make this affidavit in support of Defendants' Motion for Summary Judgment.

5. A true and correct copy of the original Note, in redacted form, is attached hereto as **Exhibit A.**

However there is no foundation for this affidavit.  The Court in *Deutsche Bank National Trust v. Moynihan*, 270 F.Supp. 3d 497 (D. MA., 2017) in a

Lost Note case held that a sufficient foundation for  testimony regarding the

time that the note was lost was sufficient:

Under the business records exception, the court may refuse to admit records
unless, "the opponent does not show that the source of information or the
method or circumstances of preparation indicate a lack of trustworthiness."
Fed. R.Evid. 803(6)(E). "The determination of whether a foundation has
been properly laid for application of Federal Rules of Evidence 803(6) and
whether the circumstances indicate lack of trustworthiness is within the
discretion of the district court."

Recently the First Circuit Court of Appeals analyzed the Business

Records exception in  the *US Bank National Association v. Jones*, 18-

1719(May 30, 2019) references FRE 803(6) and records of prior mortgage

services and  is the basis for Defendant's Motion to Strike the Affidavit of

Joseph K. Scully, the purported affiant in the Summary Judgment motion in

this case and is a basis for the Summary Judgement defense.  In *Jones*, the

Court analyzed the hearsay rule and whether the testimony of a Caliber Loan

Servicing employee and an exhibit referencing the status of the loan after

two prior servicers was properly admitted under the hearsay rule business

record's exception FRE 803(6).  The issue in *Jones* was whether there was a

sufficient foundation under 803(6) for the current loan servicer employee to

testify about the status of the mortgage loan account and how it was boarded

into the electronic system of record of the current servicer.  In *Jones*, there

was live testimony of a witness at a foreclosure trial. The Court set forth the

criteria for the admission of records of another servicer.  The Court held:

[W]hether a third party's records . . . can be integrated into the records of the
offering entity . . . for purposes of admission under the business records
exception **is not an issue upon which this circuit has reached a uniform
conclusion**" covering every instance. United States v. Savarese, 686 F.3d 1,
12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the
facts of each case.**

Thus, we have affirmed the admission of business records containing third-
party entries without third-party testimony where the entries were
**"intimately integrated**" into the business records, FTC v. Direct Marketing
Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that
produced the business records "**relied on the [third-party] document and
documents such as those[] in his business,**" United States v. Doe, 960 F.2d
221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in
the absence of third-party evidence**, we have rejected the admission of
business records containing or relying on the accuracy of third-party
information integrated into the later record where, for example, the
later business did not "use[] a procedure for verifying" such
information, lacked a "self-interest in assuring the accuracy of the
outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st
Cir. 1999) (emphasis omitted), or sought admission of third-party statements
made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187
F.3d at 75 (alterations omitted)). The key question is whether the records in
question are "reliable enough to be admissible." Direct Marketing Concepts,
624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business
records is said variously to be supplied by systematic checking, by
regularity and continuity which produce habits of precision, by actual
experience of business in relying upon them, or by a duty to make an
accurate record as part of a continuing job or occupation**." Fed. R. Evid.
803 advisory committee's note to 1972 proposed rules. The rule seeks "to

capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee

who had

testified that:

**Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added)

The Court also noted that the mortgagor did not dispute the transaction

history by claiming overbilling or unrecorded payments not contested the

findings of the District Court that there were no discrepancies.

In view of *Jones*, the affidavit of Joseph K. Scully is defective

because it does not verify anything about the travel of the purported note, the

verification that this was the document and how he obtained any information

that this document was the long missing note. If a Plaintiff in a case merely

signed an affidavit stating that this is not the original note without any

supporting evidence, that affidavit would be stricken. Here the Defendants

waited more than 14 months before miraculously finding what it claimed

was the lost note, which varied in form from four separate notes provided to

the Rhode Island Bankruptcy Court on three occasions and to the Plaintiffs'

attorney on one occasion. These notes all were presented as true and

accurate copies of the note but were all different.  The three notes filed with

the Bankruptcy Court are as follows:

Exhibit A-2,  the copy of the note filed in the Bankruptcy Court on May 18,

2012,  Exhibit A-2,  the copy of the note filed in the Bankruptcy Court on

May 18, 2012 and Exhibit A-4,  the copy of the note filed in the Bankruptcy

Court on October 23, 2017 all were presented by Caliber as purported to be

true copies of the note. These were three different copies of the mortgage

note. However these versions of the note did not contain a bar code at the

top of the right side of the page and contained two punch holes on the top of

the note.

However Exhibit A-10,the unredacted copy of the note this copy

which Caliber represented to the Court was a true copy of the note,

contained bar codes and a handwritten number to the right of the first page

of the document.  This document was filed under seal to avoid displaying the

account number. This form of the note is identical to the form of the note

attached to the Lost Note Affidavit of Nationstar Mortgage LLC , Exhibit A-

5,  dated October 28, 2014, which contains a different account number for

10

Nationstar and an unidentified account number handwritten on the note. It
also contains the same bar codes as the version of the note contained in
Exhibit A-10.  Another  difference is a label marked copy on the top of the
copy of the note in Exhibit A-5.

These differences in these versions of the notes are highly relevant
under Rhode Island law, including the lost note issue. The Rhode Island
Supreme Court recently decided the case of *Note Capital Group Inc. v.
Perretta,* May 23, 2019. Perretta involved a grant of Summary Judgment
where there were multiple versions of the note which had been lost.   The
Court initially noted:

We begin with a recital of the overriding principles of law applicable to the
transaction in this case. "Generally, there are two operative documents to a
real estate loan transaction—a promissory note and a mortgage." *Bucci v.
Lehman Brothers Bank, FSB,* 68 A.3d 1069, 1077 (R.I. 2013). "The
promissory note evidences the obligation of the borrower to repay the
monies that have been lent, and the mortgage (or mortgage deed) acts as
security for that debt." *Id.* A promissory note is a type of negotiable
instrument, which is governed by Rhode Island's Uniform Commercial Code
(Rhode Island UCC).[10] *SMS Financial XXV, LLC v. Corsetti,* 186 A.3d
1060, 1066 (R.I. 2018). "Additionally, `Rhode Island is a title-theory state,
in which a mortgagee not only obtains a lien upon the real estate by virtue of
the grant of the mortgage deed but also obtains legal title to the property
subject to defeasance upon payment of the debt.'" *Bucci,* 68 A.3d at
1078 (quoting *140 Reservoir Avenue Associates v. Sepe Investments,
LLC,* 941 A.2d 805, 811 (R.I. 2007)).

In this case, the Plaintiff alleged in the Pleadings that the note had been lost.

The Defendant filed Summary Judgment containing a version of the note

which was significantly different than prior copies filed by the Defendants in the Bankruptcy Court.

The Rhode Island Supreme Court noted that there was a problem with multiple versions of the note in a Motion for Summary Judgment. It held that as a matter of substantive Rhode Island law different versions of the note raised questions of fact as to which version the alleged note holder and mortgagee was attempting to enforce. The Court stated:

However, in doing so, the hearing justice made an impermissible factual determination regarding the validity of the note that Note Capital is attempting to enforce. In discovery, the Perrettas presented their own affidavit, along with several versions of the note that had been sent to them throughout the bankruptcy and foreclosure proceedings. This fact alone calls into question ARELIX's (and, by extension, Note Capital's) authority to enforce the lost note, because it is not clear which version of the note, if any, is authentic.

A similar, if not identical situation exists in this case. There are different versions of the note which had been lost prior to October 28, 2014. The version presented by the Defendants in its motion for summary judgment differs radically from those presented by the Defendant in the Bankruptcy Court as mentioned above. There is no proof of authenticity of this "actual note". The Defendant bases its entire motion on the assertion of its Attorney that "I received the original subject note", without any authentication or verification. Thus this version of the note does not provide

a basis for summary judgment, since under *Perretta* and Rhode Island law,

there are genuine issues of material fact raised by the Plaintiff, which

mitigate against Summary Judgment.

Another issue is the standing of the Defendants to even address this

issue due to the lack of reliability of their chain of title as to the owner of the

mortgage.  *Perretta* restated under Rhode Island law the distinction between

void and voidability:

> Moreover, we agreed that mortgagors do `not have standing to
> challenge shortcomings in an assignment that render it merely voidable at
> the election of one party but otherwise effective to pass legal title.'" *Id.* at
> 997 (quoting *Mruk,* 82 A.3d at 536). "A void contract is one that cannot be
> enforced, and in the mortgage context, a void assignment `is one in which
> the putative assignor never properly held the mortgage and, thus, had no
> interest to assign.'" *Id.* (quoting *Wilson v. HSBC Mortgage Services,*
> *Inc.,* 744 F.3d 1, 10 (1st Cir. 2014)).

In view of this, the Plaintiffs have retained an expert witness, Bernard Jay

Patterson to dispute the Motion for Summary Judgment by presenting facts

that this Defendant does not have a valid assignment of mortgage.  His

Affidavit is attached to this Memorandum of Law. In this affidavit he

presented the following facts which indicate that US Bank lacks standing to

raise any issues in this case:

There were four purported assignments in the Chain of Title.

Assignment #1 – from Mortgage Electronic Registration Systems, Inc. to

Bank of America, N.A.. dated 08/27/2011 and recorded 09/19/2011.

**(Exhibit #4)**

Assignment #2 – from Bank of America, N.A. to Homeward Residential,

Inc., dated 09/10/2012 and recorded 11/26/2012. **(Exhibit #5)**

Assignment #3 – from Homeward Residential, Inc. to Nationstar Mortgage,

LLC, dated 04/16/2014 and recorded 04/28/2014. **(Exhibit #6)**

Assignment #4 – from Nationstar Mortgage LLC to US Bank Trust, N.A. as

Trustee for LSF9, dated 08/06/2014 and recorded on 12/12/2016. **(Exhibit**

**#7)**

This expert also reviewed Defendants' Declaration of Dean Meyer, dated

03/01/2019 and filed 05/16/2019 as Doc 29-1, pages 205-207. **(Exhibit #8)**

According to his investigation, examination and analyses and as part of

standard procedures, Mr. Patterson found this loan was sold to Freddie Mac

Pool C90983 on or around 08/01/2006.1 **(Exhibit #9).**  This is further

supported by Mr. Dean Meyer's assertion in his Declaration dated

03/01/2019 which states in part, *"…Federal Home Loan Mortgage*

*Corporation ("Freddie Mac"), former owner of a loan given to the Plaintiffs*

*David St. Amour and Diane St. Amour…."*

This data is publically available information found at:

https://freddiemac.mbs-

securities.com/freddie/account/datafiles/singleclass/issuance

Mr. Meyer's Declaration further asserts the subject loan was sold from

Freddie Mac to US Bank as Trustee for LSF9 Master Participation Trust on

or after 03/16/2014. (Para 2(d))

Mr. Patterson's examination of Assignment #1 from Mortgage Electronic

Registration Systems Inc. to Bank of America, N.A. found the following

issues and/or discrepancies:

a. The assignment states in part, *"...all beneficial interest under that certain*

*Mortgage described below together with the note(s)..."*

According to his analysis, MERS' rules state as follows:

"MERS should only be reflected as assigning the Mortgage/Deed of

Trust/Security Deed; MERS should not be reflected as assigning the

promissory note." Excerpt attached as **Exhibit #10**

The note purportedly being assigned in the document and MERS' rules

conflict.

b. The assignee of the assignment (Bank of America) is/was not the owner

of this loan on 08/27/2011. According to his investigation, Freddie Mac

owned this loan on this date.

His analysis of Assignment #2 from Bank of America, N.A. to Homeward Residential found the following issues and/or discrepancies:

a. The assignor, Bank of America did not own this loan on the date of this document according to his investigation and Mr. Meyer's Declaration.

b. The assignee, Homeward Residential did not own this loan on the date of this document according to my investigation and Mr. Meyer's Declaration.

His analysis of Assignment #3 from Nationstar Mortgage LLC to US Bank as Trustee for LSF9 found the following issues and/or discrepancies:

a. The assignor, Nationstar Mortgage LLC did not own this loan on the date of this document according to his investigation and Mr. Meyer's Declaration.

 As a result of the discrepancies in the versions of the note and the transactional history of the mortgage, there exist genuine issues of material fact which mitigate against Summary Judgment.

DAVID ST. AMOUR

DIANE ST. AMOUR

By their attorney
/s/ John B. Ennis
July 25, 2019                              John B. Ennis, Esq. #2135
1200 Reservoir Avenue
Cranston, RI 02920
401-943-9230
jbelaw75@gmail.com

<u>CERTIFICATION</u>

     I hereby certify that I emailed a copy of the above Memorandum of Law in Support of Objection to Motion for Summary Judgment to the following electronically, on this 25th day of July, 2019:

Joseph Scully

<u>/s/ John B. Ennis</u>